**UNITED STATES of America, Plaintiff,**

v.

**Israel SANTIAGO–LUGO et al., Defendants.**

**Crim. No. 95–029 (JAF).**

United States District Court, D. Puerto Rico.

June 6, 1995.

---

Francisco Rebollo–Casalduc, Trial Atty., U.S. Dept. of Justice, Guillermo Gil, U.S. Atty., Dist. of Puerto Rico, San Juan, PR, for plaintiff.

Erick Morales & Humberto J. Ramírez, San Juan, PR, for Israel Santiago–Lugo.

Raymond Rivera–Esteves, San Juan, PR, for Joseph Soto–Garcia.

Luz M. Rios–Rosario, San Juan, PR, for Luis A. Marrero–Ortiz.

Francisco M. Dolz–Sanchez, San Juan, PR, for Javier Vilches–Lasalle.

Wilfredo Figueroa–Velez, San Juan, PR, for Eulalio Candelaria–Silva.

Rafael Anglada–Lopez, San Juan, PR, for Nelson Ortiz–Baez.

Laura Maldonado–Rodriguez, Asst. Federal Public Defender, San Juan, PR, for Alberto Medina–Acevedo.

Miriam R. Ramos–Grateroles, San Juan, PR, for Angel M. Andrades–Marrero.

## MEMORANDUM ORDER

FUSTE, District Judge.

### I.

The standards for professional conduct of attorneys in the U.S. District Court for the District of Puerto Rico are the Model Rules of Professional Conduct adopted by the American Bar Association on August 2, 1983. *See* Local Rules Dist. P.R. R. 211.4(B). Rule 4.2 of the Model Rules provides as follows:

> Rule 4.2 **Communication with Person Represented by Counsel.**
>
> In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

This rule is substantially identical to Section 7–104(A)(1) of the American Bar Association's Model Code of Professional Responsibility, DR 7–104(A)(1).

Rule 4.2 is applicable to both civil and criminal litigation. Although we are not

aware of any decision by the U.S. Court of Appeals for the First Circuit on this issue, recent Second Circuit case law so confirms. *Grievance Committee for the Southern District of New York v. Simels,* 48 F.3d 640, 647 (2d Cir.1995); *United States v. Hammad,* 858 F.2d 834, 837–38 (2d Cir.), *cert. denied,* 498 U.S. 871, 111 S.Ct. 192, 112 L.Ed.2d 154 (1990).

Rule 4.2 protects a represented defendant from the danger of giving away any important valid right by opposing counsel's ingenious interrogation. The provision also protects a represented defendant from disclosing privileged information or from being subject to unjust pressures while he prepares a defense assisted by counsel, in this instance, within a multi-defendant case. Rule 4.2 provides a mechanism for a lawyer to interview another codefendant or party also represented by counsel. The rule provides that the lawyer who wishes to interview must obtain the consent of the codefendant's attorney. This court's standard practice in similar situations is to recommend a written consent and the presence of counsel for the interviewed party at the time of the interview.

■ According to *Grievance Committee,* 48 F.3d at 649–51, Rule 4.2 or its equivalent, DR 7–104(A)(1), should be interpreted restrictively in defining "party" under Rule 4.2. Some examples of restrictive interpretation are in order. A potential witness against somebody else's client, who may be a future defendant in the same case, is not a "party" for purposes of the rule. In addition, a cooperating witness who may be a possible codefendant or a party in a criminal proceeding is not a "party" for purposes of Model Rule 4.2. The government, by merely naming a cooperating witness as a codefendant, cannot cut off a defendant's ability to contact a represented codefendant, even though that person would not likely be a codefendant at trial. *See Id.* at 650. Under Rule 4.2, defense counsel may freely contact a represented co-target during the investigative phase of a conspiracy. The co-target at that particular stage of the proceedings is not a "party" for purposes of Model Rule 4.2. In other words, independent, bona fide-party status must indeed exist. Nominal or formal classi-

fication of a codefendant as a "party" is not enough. However, when it is crystal clear that the interviewed defendants are bona fide parties, counsel for codefendants or the prosecutor cannot proceed without permission to interview.

■ This court normally encourages complete pretrial preparation and by no means would be critical of a defense attorney's pretrial investigation efforts directed to producing valuable information for impeachment purposes or other direct or circumstantial evidence on a client's innocence. Zealous representation, as required by the Sixth Amendment, is not equivalent to professional misconduct, but, when a conspiracy case is on the final road to trial, counsel for one codefendant cannot, without securing the necessary permission mentioned in Model Rule 4.2, unilaterally contact other represented codefendants who also have a genuine interest in defending their cause or in negotiating a good plea agreement with or without the benefits of a cooperation agreement. Under those circumstances, a violation of Model Rule 4.2 exists and some form of disciplinary action, such as a censure, must be considered as a sanction. *Grievance Committee,* 48 F.3d at 648, *citing United States v. Dennis,* 843 F.2d 652, 657 (2d Cir.1988).

### II.

■ The present case is a 31–defendant, drug-conspiracy indictment, set for trial late this summer. Counsel for the principal codefendant, Israel Santiago–Lugo, a/k/a "El Doctor", attorneys Erick Morales and Humberto J. Ramírez, contacted *ex parte* seven of Santiago–Lugo's codefendants to favor his client, in disregard of the interviewed codefendants' particular situations. In the case of one codefendant, Javier Vilches–Lasalle, a typewritten sworn statement under penalty of perjury was obtained. Codefendant Israel Santiago–Lugo is viewed as the leader and manager of the organization and he is charged with being involved in serious criminal acts ranging from drug distribution, weapons, and violence, to money laundering. The matter of Messrs. Morales and Ramírez' intervention with the clients of other attorneys was brought to the court's attention by

defense counsel for Alberto Medina–Acevedo, *see Docket Document No. 284,* on May 24, 1995. Since then, codefendant Angel M. Andrades–Marrero joined through motion dated May 26, 1995, *Docket Document No. 290.*

A hearing was held on this matter on June 2, 1995, at 3:30 P.M. In addition to the formal movants, counsel for codefendant Javier Vilches–Lasalle also appeared and voiced a similar complaint. The court inquired from attorneys Morales and Ramírez and it was evident that, as part of their trial preparation strategy, they decided to interview as many codefendants as possible, take notes on all the interviews, and, if permitted, obtain written confirmation of the interview content by sworn statements or declarations under penalty of perjury. The court confronted defense counsel Morales and Ramírez with Model Rule 4.2. Counsel Morales and Ramírez claimed not being fully familiar with the applicability of Model Rule 4.2 to criminal cases, a claim that the court does not believe. The court ordered the offending attorneys to file a motion under penalty of perjury listing all the codefendants they had contacted or attempted to interview, and those actually interviewed. The court also ordered that the original notes of interviews and any sworn statement obtained be filed with the court in original form and that no photocopies or notes be made of their content. Messrs. Morales and Ramírez were ordered to file the motion in compliance with the court's order by Noon, June 5, 1995. The compliance motion shows that seven codefendants were contacted or interviewed. The motion also contains information regarding the cases in which interviews were actually carried out and in which notes or sworn statements were taken. Defense counsel Morales and Ramírez contacted the following codefendants:

1. Javier Vilches–Lasalle; date: April 22, 1995; notes and a sworn statement under penalty of perjury were taken and they appear attached to counsel's motion.
2. Joseph Soto–García; date: April 22, 1995; notes were taken and they appear attached to counsel's motion.
3. Alberto Medina–Acevedo; dates: April 22 and May 3, 1995; notes were taken and they appear attached to counsel's motion.
4. Luis Marrero–Ortiz; date: April 27, 1995; notes were taken and they appear attached to counsel's motion.
5. Eulalio Candelaria–Silva; date not listed; notes were taken and they appear attached to counsel's motion.
6. Nelson Ortiz–Baez; date: April 27, 1995; notes were taken and they appear attached to counsel's motion.
7. Angel M. Andrades–Marrero; no date listed or notes made as reported by defense counsel.

The court has carefully examined the original notes and the sworn statement taken of Javier Vilches–Lasalle, and ORDERS as follows:

The court will make available a photocopy of the notes pertaining to the interviewed defendants to their attorneys of record. In addition, the court will make available to counsel for Javier Vilches–Lasalle a copy of the sworn statement subscribed by him. As announced during the June 2, 1995, hearing, the court will not allow attorneys Morales and Ramírez to make use of the information obtained in the event that any of the affected codefendants decides to take the stand at trial or for any other purpose that benefits Israel Santiago–Lugo to the detriment of the interviewed codefendants. The court will not allow the use of the information obtained for any cross-examination purposes. The court is actually *suppressing* the work-product of attorneys Morales and Ramírez' intervention with represented codefendants in violation of Model Rule 4.2.

Attorneys Morales and Ramírez have failed to articulate any valid legal reason that supports their actions in this case. The court **censures** attorneys Morales and Ramírez and specifically ORDERS that any future attempt to interview a codefendant be made in strict compliance with Model Rule 4.2, obtaining the necessary consent, preferably in writing, with counsel for the party to be interviewed present at the interview. Of course, any defendant whose interview is sought may or may not consent to the interview to protect the defendant and counsel,

and that consent should be best memorialized by the presence of the interviewed party's counsel at the time of the interview.

Although a violation of Model Rule 4.2 occurred, the sanction of censure and the corrective action taken by the court today with the sealing of the original notes and sworn statement, along with the prohibition on the use of the material obtained, adequately protect the interviewed defendants' interests in this case and vindicates the violation to Model Rule 4.2.

**IT IS SO ORDERED.**