FRANCISCO A. BESOSA, UNITED STATES DISTRICT JUDGE
*157 Before the Court are defendant Lara Castro-Ward ("Castro")'s third and fourth motions to compel disclosure of documentary, photographic and video evidence pursuant to Federal Rule of Criminal Procedure 17 (" Rule 17"). (Docket Nos. 32 and 38.) For the reasons set forth below, the Court DENIES Castro's third and fourth motions to compel.
I. Background
Castro purportedly attempted to provide contraband, consisting of cellular phones, to inmates at the Metropolitan Detention Center ("MDC") in Guaynabo, Puerto Rico on July 30, 2016. (Docket No. 3.) On June 21, 2018, a federal grand jury charged Castro with willfully making false statements to United States Bureau of Prisons ("BOP") officials, and attempting to provide contraband in prison in violation of 18 U.S.C. § 1001(a)(2) and 18 U.S.C. §§ 1791(a)(1) and (b)(4), respectively. Id. Subsequently, the Court issued a scheduling order setting trial for August 29, 2018. (Docket No. 10 at p. 1.)
On July 20, 2018 the United States notified Castro that it intends to elicit at trial: (1) evidence that Castro smuggled contraband into MDC on prior occasions, (2) financial records demonstrating that Castro received payment for providing contraband to inmates at MDC, and (3) evidence that Castro destroyed evidence and made false statements to law enforcement officers. (Docket No. 16, Ex. 1.) The notification informed Castro that the United States intends to offer Castro's prior bad acts into evidence pursuant to Federal Rule of Evidence 404(b) (" Rule 404(b)"). Id.
Castro's motions to compel constitute her third and fourth attempts to obtain discovery. First, Castro requested discovery pertaining to alleged prior bad acts. (Docket No. 16.)[1] The Court denied Castro's first ex parte motion. (Docket No. 19.) Second, Castro requested that the Court compel the BOP to produce: (1) an original copy of the Attorney's Visiting Log Book from 2015 to the present, (2) the monitored call records and Corr Links Communications for inmates with knowledge of an alleged contraband scheme, (3) the unredacted manual for the X-ray machine at MDC, (4) all surveillance video of Castro's visit to MDC on July 30, 2016, (5) the original copy of all images including metadata of alleged contraband confiscated by BOP security officers on July 30, 2016, and (6) an explanation from the BOP should the evidence requested by Castro not exist. (Docket No. 28.) The Court denied Castro's second motion to compel for failure to comply with Rule 17. (Docket No. 30.)
Castro sets forth identical discovery requests in her third motion to compel. (Docket No. 32.) The third motion to compel, however, also requests surveillance images from MDC of private investigator *158 Sherley Montilla from 2015 to the present. Id. at p. 5. In her fourth motion to compel, Castro requests "any and all social and legal visiting logs for inmate Emmanuel Moyano Rodríguez" ("Rodríguez"), while an inmate at the Rover A. Deyton Detention Facility in Lovejoy, Georgia. (Docket No. 38 at p. 4.) The United States produced notes from an agent with the Federal Bureau of Investigation suggesting that Castro attempted to deliver contraband to Rodríguez at the Deyton facility. Id. at p. 2. According to Castro, "the following items must be sought directly from the Bureau of Prisons" to prepare for trial. Docket No. 32 at p. 2; see Docket No. 38 at p. 3 ("Defendant needs to be able to obtain the pre-trial discovery with sufficient time before trial."). Because Castro misconstrues Federal Rule of Criminal Procedure 17, the Court denies her third and fourth motions to compel.
II. Federal Rule of Criminal Procedure 17
Rule 17 governs the issuance of subpoenas in criminal cases. See United States v. Guzmán-De Los Santos, 944 F. Supp. 2d 126 (D.P.R. 2013) (Besosa, J.) (granting motion to quash subpoena pursuant to Rule 17 ). In pertinent part, Rule 17 provides that:
[a] subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.
Fed. R. Crim. P. 17(c)(2). Rule 17 is an instrument intended exclusively for trial or a formal hearing. See United States v. Louis, No. 04-203, 2005 WL 180885, at *3, 2005 U.S. Dist. LEXIS 1087, at *8 (S.D.N.Y. Jan. 27, 2005) (holding that the purpose of 17(c) subpoena is "trial-focused" and may be used "only to obtain materials admissible as evidence at trial"); United States v. Montañez-Ortiz, 290 F.R.D. 33 (D.P.R. 2013) (holding that subpoena directing Police of Puerto Rico to produce documents in court violated Rule 17 because "there was no trial or adversarial hearing scheduled in this case for that date and time").
The purpose of a subpoena is to compel testimony or other admissible evidence at an adversarial hearing. See United States v. Santiago-Lugo, 904 F. Supp. 43 (D.P.R. 1995) (Fusté, J.) ("The rule is crystal clear about the fact that the production of documents allowed by [ Rule 17 ] is intimately related to the attendance of the witness at a particular time and place to a formal proceedings before the court [i.e. ] a trial, a hearing, a preliminary hearing, a grand jury proceeding").
Courts invariably define Rule 17 in the negative: subpoenas are not discovery devices or investigatory tools. See, e.g., United States v. Caro, 597 F.3d 608, 620 (4th Cir. 2010) ("We have emphasized that Rule 17(c) is not a discovery device") (internal citation omitted). In United States v. Nixon, the Supreme Court stated explicitly that one of the "fundamental characteristics of the subpoena duces tecum in criminal cases" is that "it was not intended to provide a means of discovery." 418 U.S. 683, 698, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974) ; see also Bowman Dairy Co. v. United States, 341 U.S. 214, 221, 71 S.Ct. 675, 95 L.Ed. 879 (1951) (invalidating a Rule 17(c) subpoena because it was "not intended to produce evidentiary material but [was] merely a fishing expedition to see what may turn up"); 2 Wright, Federal Practice and Procedure: Criminal § 274 at 153 and n. 16 (1982) ("It has always *159 been clear that Rule 17(c) was not intended as a discovery device").
The proponent of a subpoena must demonstrate "(1) relevancy; (2) admissibility; [and] (3) specificity" of the requested materials. Nixon, 418 U.S. 683, 699-700, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974) ; see also Stern v. United States, 214 F.3d 4, 17 (1st Cir. 2000) (holding that materials requested with a subpoena duces tecum must be relevant, admissible and specific). As to relevancy, there must be a "sufficient likelihood" that the subpoenaed records are "relevant to the offenses charged in the indictment." Nixon. 418 U.S. at 699-700, 94 S.Ct. 3090 (internal citation omitted). There must also be a "sufficient preliminary showing" that the subpoenaed material "contains evidence admissible with respect to the offenses charged in the indictment." Id. at 701, 94 S.Ct. 3090. Moreover, the party seeking the subpoenaed documents shoulders the burden of "show[ing] the evidentiary nature of the requested material with appropriate specificity." United States v. Shinderman, 232 F.R.D. 147, 149 (D. Me. 2005).
III. Discussion
Castro premises her third and fourth motions to compel on an impermissible basis. (Docket No. 32.) Castro argues that Rule 17, compels the BOP to produce all items "pertain[ing] to material necessary for proper trial preparation, discovery of impeachment and/or exculpatory evidence." (Docket No. 32 at p. 1; Docket No. 38 at p. 1.) The Court emphasizes, however, that Rule 17 is not a discovery device. See United States v. Cartagena-Albaladejo, 299 F. Supp. 3d 378, 395 (D.P.R. 2018) (Besosa, J.) (granting motion to quash because defendant "has attempted to use the subpoena power of the Court as an investigative tool"). Rule 17 subpoenas are issued "only for the purpose of compelling the attendance of witnesses or the production of evidence at formal proceedings, such as grand jury proceedings, preliminary hearings, and trials." United States v. LaFuente, 991 F.2d 1406, 1411 (8th Cir. 1993).
The subpoenas requested by Castro are for investigative purposes, designed to assist Castro in forging a defense against the allegations set forth in the indictment. Absent from Castro's third and fourth motions to compel is any request to confirm the attendance of a witness or the production of evidence. (Docket No. 32.) The Court cannot authorize subpoenas to reveal potential evidence because doing so would convert Rule 17 into the discovery tool it is not. See United States v. Noriega, 764 F. Supp. 1480, 1492 (S.D. Fl. 1991) (" Rule 17(c) which covers subpoenas for documents and other materials, is not a discovery device."); United States v. Libby, 432 F. Supp. 2d 26, 30 (D.D.C. 2006) ("Courts must be careful that Rule 17(c) is not turned into a broad discovery device") (quoting United States v. Cuthbertson, 630 F.2d 139, 146 (3d Cir. 1980) ). Accordingly, the Court DENIES Castro's third and fourth motions to compel.
The fairness and credibility of our criminal justice system largely depends on prosecutors diligently complying with their discovery obligations. That a defendant may not be entitled to subpoena certain records does not necessarily mean that the United States has no obligation to produce those same records if, for example, they contain material falling with the scope of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) ; Kyles v. Whitley, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), or any other rule of disclosure. The Court assures Castro that it will remain vigilant in ensuring that the United States complies with all discovery obligations.
*160 IV. Conclusion
For the reasons sets forth above, Castro's third and fourth motions to compel are DENIED WITH PREJUDICE . Trial remains set for August 29, 2018. No extensions will be allowed.
IT IS SO ORDERED .

Castro requested that this Court compel the United States to disclose: (1) the dates that Castro purportedly provided contraband to inmates at MDC prior to July 30 2016, (2) the identity of the inmates who allegedly received contraband from Castro, (3) the specific funds relating to payment received by Castro for allegedly smuggling contraband into MDC, (4) information regarding the X-ray machine at MDC, and (5) video and photographs showing that Castro smuggled contraband into MDC. (Docket No. 16 at p. 6.)